GALT *et al.* *v.* PARLIN & ORENDORFF Co.

*(Circuit Court, N. D. Illinois, S. D.* October 31, 1892.)

PATENTS FOR INVENTIONS—NOVELTY—WHEEL HARROWS.

The 5th, 6th, and 7th claims of reissued letters patent No. 8,765, dated June 24, 1879, to Jay S. Corbin, for an improvement in wheel harrows, consisting of the combination with a gang of rotating harrow disks of a lever for setting the same, are void for want of novelty, the improvement being merely a change in the location of the lever previously used.

In Equity. Suit by Thomas A. Galt and others against the Parlin & Orendorff Company for infringement of a patent. Decree dismissing the bill.

*John G. Manahan,* for complainants.
*Bond, Adams & Pickard,* for defendant.

BLODGETT, District Judge. This is a bill in equity for an injunction and accounting by reason of the alleged infringement of patent No. 197,-

545, granted November 27, 1877, to Jay S. Corbin, for an improvement in "wheel harrows," reissued June 24, 1879, No. 8,765.

The inventor says in his specifications:

"My invention relates to the improvement of that class of machines known as 'wheel' or 'disk' harrows, in which the disks are arranged in two or more gangs upon horizontal rotating shafts; and has for its object the construction of the machine in such manner as to adapt the gangs to follow the uneven surface of the ground; also to provide for the easy and rapid setting of the gangs at any desired angle to the line of draught while in motion or at rest, and holding the same when set; * * * also to provide a ready means of setting the gangs at different angles relative to the line of draught."

The reissued patent has 11 claims, but infringement is charged only as to the 5th, 6th, and 7th.

The original claims relating to the part of the harrow in controversy are:

"(5) The combination with a gang of rotating harrow disks of a lever connected to the gangs for setting the same at an angle with the line of the draught substantially as described. (6) The combination with a gang of rotating harrow disks of a lever for setting the same at an angle with the line of draught, and a rack and dog for holding the disks in position when set, substantially as described."

The 5th, 6th, and 7th claims of the reissue are:

"(5) The combination in a wheel harrow of the following elements, viz.: A draught frame or a draught plank projecting laterally from the tongue, disk gangs pivoted to the draught frame or draught plank, and a set lever mounted on the tongue, and connected with the disk gangs between the points at which said gangs are connected with the draught frame or draught plank, substantially as set forth. (6) The combination, substantially as set forth, in a wheel harrow, of the following elements, viz.: A tongue, a draught frame or draught plank projecting laterally from the tongue, disk gangs pivoted to the draught frame or draught plank, a lever mounted on the tongue, and rods connected with the levers and the metal bearings which support the inner ends of the disk gangs. (7) The combination, substantially as set forth, in a wheel harrow, of the following elements, viz.: A tongue, a draught plank or draught frame projecting laterally from the tongue, disk gangs pivoted to the draught plank or frame, a lever mounted on the tongue, connected with the inner end of the disk gangs, and a rack and dog for holding the disks in proper position when set."

It will be seen from these claims that the only controversy in the case is over what is called in the specifications the "set lever," by which the angle at which the disks shall cut the ground is regulated. This lever consists of a vertical arm pivoted to the tongue forward of the driver's seat, the lower end of which extends below the tongue, and from which two rods extend, one to the inner end of each of the gang shafts or axles, so that by the movement of the lower end of this lever forward or backwards the angle of the gangs is regulated. There is also upon the top of the tongue a rack or sector, with a dog working in it, to hold the gangs at the required angle. The defenses relied upon are want of novelty in this lever device, and noninfringement.

The proof shows that this patentee is only an improver, and a late improver at that, of this class of agricultural instruments; that in Septem-

ber, 1859, a patent was issued to S. G. Randall for a disk harrow embodying all the elements of the complainant's machine, except that no set lever for changing the angle of the gangs is shown in the patent. The proof, however, abundantly shows that in constructing his harrows in accordance with his patent Randall had a lever for adjusting the angle of the disk gangs which, although operating substantially in the same way, and performing the same work, as that done by the complainant's lever, was not mounted upon the tongue or frame of the machine, but was so placed that it must be operated by a person standing or walking behind the machine. There is also in proof a patent granted to E. C. Winters, in May, 1875, on a revolving cultivator, which is a machine analogous in its use to that of complainant, in which a set lever, mounted on the tongue, is shown, which operates to change the running depth of the spades or cutters which are shown in that device. In several other machines referred to in the testimony the regulation of the angles of the disk gangs by means of rods and levers is shown. So far as the terms of the claims on which infringement is charged in this patent are concerned, they are, as it seems to me, completely met by the old Randall lever of 1863, applied to the harrow shown in the patent of 1859; that is, Randall had a combination with a gang of rotating harrow disks of a lever connected to the gangs for setting the same at an angle with the line of draught, and its operation was substantially as described, but it was not located in the same place; and undoubtedly it was more convenient to locate this lever, which Randall had introduced into the organization, upon the tongue, than it was to locate it where Randall had it, at the rear of his frame; but, as it seems to me, no inventive talent was called into action to apply the lever shown in Winters' patent to the complainant's gang. It seems to me that this patent is but for an aggregation of parts. The idea of changing the angles of the disk frames is Randall's. The idea of doing that by means of a lever is Randall's. The lever used by Randall is substantially, in its mode of operation and effect, the same as that used by complainant; and simply to relocate that lever, or place upon the tongue of complainant's machine the Winters lever, does not seem to have required any inventive talent. It was merely a mechanical act to transfer Winters' lever to the tongue of complainant's machine. That it was an improvement upon the machine may be admitted, but that it was such an improvement as will sustain the patent I do not think, because this class of machines, so far as the proof shows, has always been operated, so far as the angles of the disk gangs are concerned, to a greater or less extent by means of a lever. Such a lever for shifting or changing the seeding shoes and hoes of the seeding machine from a straight to a zigzag line is shown in the Davis patent of 1868; and the same device is also shown in the Schmitt patent of February, 1869, on a seeding drill; and in the Manny mower patent of 1871, for tilting and lifting the cutter apparatus. In fact, it may, perhaps, be said to be a part of common knowledge that levers of this character, for the purpose of regulating the movements of plows, cultivators, seeders, and harrows, are in constant use; and all this patentee has done

is to take one of those old levers, and mount it on his tongue, for the purpose of adjusting the angle of his disk gang, instead of placing the lever where Randall placed it. It performs the same function, and no other, when placed on the frame of the machine as it did in Randall's old machine. If Randall's lever had been patented, it is quite clear the Corbin lever would have been an infringement. If Randall had attached a rod to his lever, and extended the same forward to the driver's seat, so that the angle of the disk gang could be controlled from the driver's seat, he would have had a device operating upon the same principle and producing the same result as is done by the complainant's lever; and no one, I think, would contend that it would have been patentable to so attach a rod to the Randall lever, and hold it by any common locking device. I am therefore clearly of opinion that this patent must be held void for want of novelty.